Jeremiah O'Connor et al., Appellees, v. Patrick Hassett et al., Appellants.

December 14, 1928.

*Salinger, Reynolds & Meyers,* for appellants.

*L. W. Powers* and *Sims & Page,* for appellees.

EVANS, J.—I. The case has complications of procedure and practice which are more troublesome than the question of ultimate merit. The plaintiffs filed their petition alleging their ownership of a certain 640 acres of land, and that they were entitled to the possession thereof, and that the defendants were withholding such possession from them. An abstract of title was later attached as an amendment to the petition. This petition sufficiently conformed to the requirements of Section 12236, Code of 1924. In addition to a general denial, the defendant Hassett's answer set up his claim of ownership, predicating the same upon an executory contract of purchase of said premises from the plaintiffs. This sufficiently conformed to Section 12239, which requires the answer to set forth the interest claimed in the land by the defendant. This answer set forth an executory contract of sale by the plaintiffs to one Grill, and an assignment of such contract by Grill to the defendant Hassett. Thereupon, the plaintiffs pleaded the same contract in reply, and predicated and pleaded an estoppel thereon against this defendant to deny the plaintiffs' title. Upon these pleadings, the parties went to trial. The plaintiffs put in evidence their record title, the abstract being received by stipulation, as a proper index of the recorded conveyances. It appeared from the plaintiffs' evidence that they had been in possession of the land for more than 25 years, under claim of ownership, and that they had acquired the same through their father, who had acquired the same under like claim of ownership more than 50 years ago, and had been in possession of the same down to the year of his death, in 1902. The contract also was introduced in evidence, apparently by both parties. It further appeared that the defendant Hassett had defaulted in the payment of interest on March 1, 1924, and that notice of forfeiture was served upon him and upon an alleged assignee of the con-

tract, and that all the formalities necessary to effect a forfeiture were complied with. Much of the evidence introduced by the plaintiffs was admitted by the court over objections of the defendants; but none of these rulings are complained of as grounds for reversal here, though they are complained of in the body of the argument. The complaint here is concentrated upon the proposition that the plaintiffs failed to prove their title to the land. In the absence of errors assigned and predicated upon the rulings of the court in the course of the trial, the pleadings and the evidence fall into hotchpot, and we have only to consider the ultimate merits of the case as they appear from the evidence actually introduced. Before proceeding to a consideration of such merits, we consider first the claim of the appellees. They claim an affirmance of the judgment on the ground that no errors have been specified by appellants as grounds of reversal. Appellants' argument specifies the following as their grounds of reversal:

"1. Plaintiffs not only failed to show title, but disclosed they had none to part of the lands.

"2. There is no showing that Hassett was in possession solely under a contract for sale.

"3. He would not be estopped to deny title if he were.

"4. Robb, the mortgagee, was an assignee of any contract Hassett is shown to have had, because he had a mortgage on the possession.

"5. Robb's answer must prevail, because not attacked."

The first ground above stated challenges the sufficiency of the evidence to show title in the plaintiffs. This is rather broad in its scope, and calls for a consideration of the entire record. We think, however, that it is permissible to challenge the sufficiency of the evidence to sustain the judgment. The consideration of such question necessarily involves consideration of the whole record. On the trial below, and in their brief here, the appellants pointed out many alleged defects in the record title of the plaintiffs, as the same appear from the abstract. The following quotation from the brief will be sufficiently illustrative of the nature of these objections:

"Title to N½ NE¼ of Sec. 16, Township 83, Range 38.

"1. No. 5—No wife of grantor signs. (Date is 1867.)

"2. No. 5 grantee is Justis Knapp, while at Nos. 6 and 7, grantor is Justus Knapp. Dates 1868-9 and 1875.

"3. Title to NW¼ NE¼ 16-83-38 has a break in the chain. Daniel Warren was last record owner before the break. (See No. 4). Charles N. Knapp and wife convey without authority at No. 9.

"4. No. 9 grantee is W. L. Joslyn, while at No. 10, grantor is M. L. Joslyn.

"5. No. 11 grantee is Morris B. Wiley, while at No. 12, grantor is M. B. Wiley, though acknowledgment recites Morris B. Wiley, which may make deed sufficient.

"6. No. 13 shows tax deed covering NW¼ NE¼ and running to John O'Connor. Under curative acts, this probably cures break in title spoken of at No. 3 above.

"7. No. 13 shows tax sale Oct. 4, 1880, for taxes of 1878 and 1879. Nothing further appears regarding this sale.

"8. No. 11 fails to show any wife of grantor signed. Date is in 1872.

"9. No. 12 spells grantee's name O'Conner, while elsewhere it is O'Connor. Not important.

"10. Release at No. 17 and power of attorney at No. 18 are by Wm. B. Brown, while mortgage was to William B. Brown. Not important. * * *

"11. No patent shown to cover SW¼ or W½ of SE¼ above."

Objections of this character cover 10 printed pages in the briefs. The alleged failure of proof of plaintiffs' title is predicated upon blemishes of the character here indicated. The abstract of title printed in this record covers approximately 20 printed pages. If a few or many irregularities and inaccuracies and blemishes of the character here indicated are wholly destructive of a record title, then we fear that there are comparatively few farm owners in this state who can justify their claim of ownership of their farms by the exhibit of a record title. A title may be good, even though the record thereof be imperfect. In this state, even a color of title is recognized as sufficient to sustain the possession under a good-faith claim of right. However, we do not deem the question controlling in this case, for

reasons hereinafter indicated; and we proceed to a consideration of the case on its merits as a whole.

II. In May, 1919, these plaintiffs were in possession of the land in question, under claim of ownership and under color of title, and had been in such possession for more than 15 years. In that month, they entered into an executory contract of sale of the same to Grill, for the agreed price of $160,000. $5,000 was paid at the time of the execution of the contract. $20,000 was to be paid on March 1st following. The balance, of $135,000, was to be paid on March 1, 1935, "with annual interest at 5½%." The contract contained a forfeiture clause, to be operative in event of the default of the purchaser in making the required payments. In June, 1919, Grill assigned his contract to the defendant Hassett, who, on March 1st, paid to the plaintiffs the $20,000 provided by the contract. For three years thereafter, he paid the annual interest on March 1st of each year. On March 1, 1924, he defaulted. Notice of forfeiture was served upon him, and all requisite formalities were observed. The contract provided in express terms that, in event of forfeiture, the land should revert back to the plaintiffs. Why should the plaintiffs, in order to avail themselves of the express provisions of their contract, and to get back possession of their land, be required, as a condition precedent, to show an unblemished record title from the government down? The defendant is not pleading breach of the contract by the plaintiffs. Since he himself has failed to meet the payments required, and his further right therein has been forfeited, what interest has he in the record chain of title? The attitude of the appellants is that the vendor of land by executory contract must run the risk of losing it entirely, upon default of the purchaser to pay, unless he can exhibit a perfect record title. True, the plaintiffs herein unnecessarily pleaded themselves into the operation of Section 12236, and thereby assumed a formal burden which was quite gratuitous. They had no need of the aid of such statute. A common-law remedy was available to them, and they could have predicated an action upon the contract itself, in that the purchaser had agreed therein that, in event of his default, the property should go back to the plaintiffs. The ultimate merits of the controversy did not require the consideration of any question of record title. The plaintiffs, however, having committed them-

selves to the procedure indicated by Section 12236, entered the treadmill, and traced the title of every tract over a period of 70 years. This was precautionary and prudent, though it resulted in a record the volume of which was made up of nonessentials. The defendant Hassett having denied their title, the plaintiffs, by way of reply, pleaded their contract, and pleaded that, because thereof, the defendant was estopped to deny the vendor's title. In support of such plea, they rely upon the well established rule that a vendee in an executory contract of sale of land may not, after his default and forfeiture, deny the title of the vendor. Any other rule would open a wide door to fraud and oppression. The contrary rule would operate as an inducement to designing persons to purchase lands by executory contract from an owner whose title was known to be defective and beclouded. Possession could be thus acquired by the purchaser; he could default by choice, and suffer forfeiture; he would maintain his possession because of the vendor's clouded title.

The rule invoked at this point is succinctly stated in 9 Ruling Case Law 847, as follows:

"As already seen, it is the general rule that the plaintiff in ejectment must recover, if at all, upon the strength of his own title, and not upon the weakness of his adversary's; but this rule is subject to the qualification that the title of the plaintiff need not be good as against all the world, if good as against the defendant by estoppel; and there are many cases in which the character of the defendant's title alone has been held to preclude all investigation into that of the plaintiff. Such, for instance, is the case where the relation of landlord and tenant exists, and such is also the case between vendor and vendee, where the possession of the latter is not adverse to that of the former, as where the vendee is in possession under an executory agreement of purchase."

The rule here announced has been recognized by this court in numerous cases. *Conger v. Converse*, 9 Iowa 554; *Byers v. Rodabaugh*, 17 Iowa 53; *Morrison v. Wilkerson*, 27 Iowa 374; *Denecke v. Miller & Son*, 142 Iowa 486, 493. The rule thus announced is quite decisive of the controversy herein, so far as the question of plaintiffs' title is concerned.

III. As to the other grounds of reversal specified, the

sufficiency of Nos. 2 and 3 is very questionable. Responding to the argument, however, No. 2 stresses the point that Hassett's interest in the real estate was not *solely* referable to the contract of purchase. The argument is that plaintiffs failed in their proofs at this point. The evidence is undisputed that Hassett went into possession under his contract, and that the interest he purported to acquire was under the contract. If he had an interest in the title or right of possession of the land derived from any other source than the plaintiffs, the burden of pleading such facts was upon the defendant, and not upon the plaintiffs. Code Section 12239. Whether such facts, if pleaded and proved, could be effective to lift the estoppel, is a question which would still confront the appellant, and one which we have no occasion to consider.

The proposition laid down in No. 3 is met by what we have said in Division II hereof.

It remains to consider the alleged interest of defendant Robb, as set forth in Points 4 and 5. This defendant answered to the effect that, in February, 1924, the defendant Hassett had executed to him a chattel mortgage upon the crops "and on the use and occupancy and rents and profits of the lands," and "that certain leases of said lands to tenants had been assigned to him by the defendant Hassett; and that such mortgage was an assignment of defendant Hassett's interest in the contract to the extent of the conveyance therein, and contained the warranty of said Hassett that he had good right and title to make the same; and that the said recording thereof conveyed notice of the assignment therein to plaintiffs." It is averred, also, that no notice of forfeiture was served upon him. This defendant did not set out a copy of his mortgage in his pleading, but rested upon the legal conclusions above set forth. On the trial, he introduced his mortgage in evidence. He has not, however, set it forth in the abstract presented here. The trial judge had it before him, and held, in effect, that the contents of the mortgage did not sustain the material allegations of the defense. Manifestly, there is nothing in the record presented here which will enable us to determine what the contents of such mortgage were. A chattel mortgage is a mortgage upon chattels. It is doubtless true that

162

an instrument could be so drawn as to operate as a mortgage upon chattels and as an assignment of a real estate contract. Such an instrument would be something more than a chattel mortgage. Whether the instrument in question was such a one can be determined only by a consideration of its very terms. Indeed, even if the terms of the instrument had been adequate for that purpose, it appears by other undisputed evidence that the instrument could not be effective in that respect, because the defendant Hassett had previously assigned his contract of purchase and delivered the same to McHenry & Seemann, who were the holders of the same at and prior to the time that Robb claims to have acquired an assignment thereof. The finding of the district court at this point is, therefore, quite conclusive upon the appellant.

It is our conclusion that the judgment below must be—
*Affirmed.*

All the justices concur.